```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

KEITH AGUIRRE,                                  :

                Plaintiff,                      :        OPINION AND ORDER

        -against-                               :
                                                         20 Civ. 4648 (GWG)
ANDREW SAUL,                                    :

                Defendant.                      :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Keith Aguirre brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), although plaintiff has styled his motion as one for summary judgment.[1] For the reasons stated below, Aguirre's motion is denied, and the Commissioner's motion is granted.

---

[1] See Motion for Summary Judgment, filed February 8, 2021 (Docket # 15); Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on the Pleadings, filed February 8, 2021 (Docket # 16) ("Pl Mem."); Motion for Judgment on the Pleadings, filed April 6, 2021 (Docket # 17); Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings, filed April 6, 2021 (Docket # 18) ("Def. Mem."); Letter from Joseph Romano, filed April 29, 2021 (Docket # 19).

I.  BACKGROUND

    A.  Procedural History

Aguirre applied for DIB on June 14, 2017.  See SSA Administrative Record, filed December 7, 2020, at 11 (Docket # 12) ("R.").  He initially alleged that his disability began on December 3, 2016, id., when he was 30 years old, R. 17, but at the hearing requested to amend the date of onset to July 12, 2018, R. 52.  The Social Security Administration ("SSA") denied plaintiff's application on September 27, 2017, R. 86, and Aguirre sought review by an Administrative Law Judge ("ALJ"), R. 98.  A hearing was held on April 22, 2019.  R. 48-69.  In a written decision dated May 3, 2019, the ALJ found Aguirre was not disabled.  See R. 8-18.  On May 15, 2020, the Appeals Council denied Aguirre's request for review of the ALJ's decision.  R. 1.  This action followed.

    B.  The Hearing Before the ALJ

The hearing was held by video conference before an ALJ in Jersey City, New Jersey.  R. 50.  Aguirre, represented by counsel, was in the Bronx, New York.  Id.  A vocational expert, Andrew Pasternak, was also present.  Id.

Aguirre testified that he lived with his wife and five children.  R. 55.  He has a high school education.  R. 53.

Aguirre said he initially had a surgery on his back in November 2015, and that he stopped working but then went back to work for a period of time.  Id.  After the first surgery, Aguirre was "able to stand up a little bit," and "was able to move around," so he took two months off but then "[w]orked for about 11 months straight until my back gave out again."  R. 54.  Aguirre stopped working prior to his second back surgery, which took place in July 2018.  R. 53.  Before this, Aguirre had worked three different jobs: as a security guard, doorman, and parking attendant.  R. 62-63.  He worked as a parking attendant from 2006 to 2009, as a security guard

from 2009 to 2011, and as a doorman from 2011 to 2016.  R. 78-79.

When asked the average amount of pain he experienced currently, Aguirre described it as a "good 8" on a scale of 1 to 10, R. 54, but without medication it would be "[e]xcruciating, 9, 10, max easily," R. 56.  He said he could sit for "35 minutes max" without pain, but then would "have to get up."  R. 54.  He said he could probably stand for "another 30 minutes until I start feeling discomfort," id., and that he could walk 15-20 minutes before he started "feeling my legs pulse," R. 55.  His wife does all the household chores.  Id.  He said he could only sit for an hour total during an eight-hour day.  R. 56.  He said depending on the day he would "use a cane . . . for balance because sometimes my legs give up on me" and he always wears a back brace.  R. 57.  Some days he can put on socks without assistance, but "[s]ometimes my wife helps me."  R. 58.  Aguirre said he could not go back to work because he was "always in constant pain" from his back and legs.  Id.  Aguirre is five feet ten inches and his weight was 235 pounds, which was down from a weight of 290 pounds after the second surgery.  R. 59.  Aguirre's doctor, Dr. Sharan, told him that he may need further surgery, but his back was "still healing" at this point.  Id.

The ALJ consulted a vocational expert ("VE"), Andrew Pasternak, by phone, who identified Aguirre's past work as parking attendant, security guard, and door keeper.  R. 64.  The ALJ asked the VE the following question:

> [W]e're going to assume a hypothetical individual the claimant's age, education, and work experience who can perform the full range of sedentary work as defined in the regulations except can sit for 35 minutes then must stand for 5 minutes before returning to the seated position; could stand for 30 minutes but must sit for 5 minutes before returning to the standing position; can walk for 20 minutes then must sit for 5 minutes before returning to the walking position. . . .  Never push, pull, or operate foot controls with the bilateral lower extremities; can occasionally climb ramps and stairs; can never climb ropes, ladders, scaffolds; can occasionally balance; can never stoop, kneel, crouch, and crawl; and can never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle. . . .  [A]m I correct to assume that such a hypothetical individual could

not perform the past work because it was at the light and medium level?
R. 64-65. The VE responded that the ALJ's assumption was correct. R. 65. The VE, testified, however, that such a person, so long as they "would be standing or sitting, in combination, at the work station," could find work doing other jobs in the national economy, such as order clerk, film inspector, and final assembler. R. 65-66.

    C.   The Medical Evidence

Both Aguirre and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 4-7; Def. Mem. at 2-10. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed December 9, 2020, ¶ 5 (Docket #13). While Aguirre did not object to the Commissioner's summary, the Commissioner objected to Aguirre's statement as incomplete. See Def. Mem. at 2 n.2. The Court adopts the Commissioner's summary of the medical evidence, as supplemented by Aguirre's summary, as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

    D.   The ALJ's Decision

The ALJ denied Aguirre's application on May 3, 2019. R. 18. The ALJ first found that Aguirre met "the insured status requirements of the Social Security Act through December 31, 2021." R. 13. Then, following the five-step test set forth in SSA regulations, the ALJ found at step one that Aguirre had engaged in "substantial gainful activity" from "April 2017 to June 2018" but that "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity." Id. At step two, the ALJ found that Aguirre had the following severe impairments: "status post lumbar laminectomy surgery and obesity." Id.

At step three, the ALJ concluded that none of Aguirre's severe impairments singly or in

combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 14.  The ALJ specifically considered listing 1.04 (spine disorders).  Id.  The ALJ concluded that

> Listing 1.04 is not met because the record does not show any evidence of motor loss, muscle atrophy or weakness, or sensory or reflex loss.  The claimant retains the ability to ambulate effectively and perform fine and gross motor movements.  Furthermore, there is no evidence of spinal [arachnoiditis].  The April 2019 treatment notes stated that []he had discomfort with lumbar flexion, extension, and lateral rotation, but it does not appear that he was restricted in actual movement.  (14F, pg. 28).

Id.  The ALJ noted that obesity "can complicate and aggravate existing physical . . . impairments, causing the impairment(s) to meet or equal a listing," but that here "the functional effects of the claimant's obesity" did not do so.  Id.

The ALJ then assessed Aguirre's residual functional capacity ("RFC").  Id.  The ALJ determined that Aguirre retained the ability to perform sedentary work, as defined in 20 C.F.R. 404.1567(a), with the following limitations:

> [T]he claimant can sit for 35 minutes then must stand for 5 minutes at the work station before returning to the seated position.  The claimant can stand for 30 minutes then must sit for 5 minutes at the work station before returning to the standing position.  He can walk for 20 minutes then must sit for 5 minutes at the work station before returning to the walking position.  The claimant can never push, pull, or operate foot controls with the bilateral lower extremities.  The claimant can occasionally climb ramps and stairs.  He can never climb ropes, ladders, or scaffolds.  The claimant can occasionally balance, but can never stoop, kneel, crouch, or crawl.  The claimant can never be exposed to unprotected heights and moving mechanical parts, or operating a motor vehicle.

Id.

The ALJ considered Aguirre's description of his impairments but found that "the record shows that the claimant's symptoms do not significantly diminish the claimant's ability to perform physical activities."  R. 15.  The ALJ described the objective evidence he relied upon to reach this conclusion.  R. 15-16.  He concluded that "the claimant's statements concerning

the intensity, persistence, and limiting effects of his symptoms are not consistent with the record as a whole." R. 16. The ALJ also evaluated the opinion evidence in the record, which consisted of an opinion by Dr. Joseph Cole, which he found to have "some persuasiveness," and that of "an internal medicine consultative examiner," which he found "persuasive" as it was consistent with other evidence in the record. Id.

At step four, the ALJ concluded that Aguirre was "unable to perform any past relevant work." R. 17. The ALJ found that plaintiff's RFC "allows the claimant to perform only less than sedentary work," and thus "the claimant is unable to perform past relevant work as actually or generally performed." Id.

At step five, the ALJ considered Aguirre's "age, education, work experience, and residual functional capacity." Id. Crediting the VE's testimony, the ALJ found that Aguirre could perform the jobs of "order clerk," "film inspector," and "final assembler." R. 18. The ALJ further found that these jobs existed in the national economy in significant numbers. Id. Accordingly, the ALJ determined that Aguirre was not disabled under the Act, as "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). The "threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).   Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience.   See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).   Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."   Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant is able to do such work, he or she is not disabled.   Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.   Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.   See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.   DISCUSSION

Aguirre raises two grounds for reversing the ALJ's decision: (1) the ALJ failed to properly consider whether plaintiff's impairments met or equaled Listing 1.04A, Pl. Mem. at 9-10; and (2) the ALJ failed to weigh the opinion of plaintiff's treating physician properly under the relevant regulations, id. at 10-11.   We address each ground in turn.

A.   Whether Plaintiff's Impairments Met Listing 1.04A

Plaintiff argues that the ALJ erred when he found that Plaintiff's impairments did not meet the requirements of Listing 1.04A "based on his lumbar spine impairments."   Pl. Mem. at

9.

Listing 1.04, "Disorders of the spine," includes disorders such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, Subpt. P, App. 1 § 1.04.[2] To meet Listing 1.04A, the record must reflect findings of:

> evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Id. It was plaintiff's "burden to demonstrate that [his] disability met all of the specified medical criteria of a spinal disorder." Otts v. Comm'r of Soc. Sec., 249 Fed. App'x 887, 888 (2d Cir. 2007) (emphasis in original).

Plaintiff points to different parts of the record to support his argument that his impairments met the listing. See Pl. Mem. at 9-10. He does not address the portion of the ALJ's decision that found plaintiff did not meet the listing, nor explain why the ALJ's analysis was unreasonable. Instead, he simply argues that "[b]ased on the substantial evidence of record, Plaintiff's impairments meet listing 1.04A," and thus the case should be remanded "for proper evaluation of the record." Id. at 10.

The problem for plaintiff, however, is that it is not relevant to the Court's analysis that "substantial evidence" supports his position. As we have previously noted, "if the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson,

---

[2] The regulation has since been amended so that Listing 1.04 no longer exists. The equivalent listing is Listing 1.15, "Disorders of the skeletal spine resulting in compromise of a nerve root." 20 C.F.R. § 404, Subpt. P, App. 1 § 1.01.

563 F. Supp. 2d at 454. Or, as the Second Circuit has put it, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier, 606 F.3d at 49. Plaintiff's arguments do not address the evidence relied upon by the ALJ to conclude that plaintiff did not meet the listing; they at best show that evidence supporting plaintiff's position was in the record. But, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

In any event, it is not enough that scattered portions of the record might support certain of the required elements of a listing. Rather the "claimant must show that he meets all the requirements of the listing consistently." John Q. v. Comm'r of Soc. Sec., 2021 WL 1578297, at *6 (W.D.N.Y. Apr. 22, 2021) (emphasis added); accord Casillas v. Comm'r of Soc. Sec., 2020 WL 4283896, at *4 (W.D.N.Y. July 27, 2020) (to meet listing, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months") (punctuation omitted). Indeed, the "duration requirement" mandates that an impairment must "be expected to last for a continuous period of 12 months." 20 C.F.R. § 416.909; see also 20 C.F.R. § 416.920(a)(4)(iii) (to satisfy a listing the claimant must also "meet[] the duration requirement"). In other words, plaintiff has the burden of showing that he met each of the elements of a listing for a continuous period of 12 months.

Plaintiff has not met this burden. He points to a portion of his medical records from "Eastside Medical Group" as demonstrating "limited spinal motion." Pl. Mem. at 9 (citing R. 320). But the same page shows that plaintiff's "muscle grade strength" was assessed as "4/5

lumbosacral paraspinals." R. 320. Such a finding means that Listing 1.04A (which requires "motor loss (atrophy with associated muscle weakness or muscle weakness)") was not satisfied. Accord Killings v. Comm'r of Soc. Sec., 2016 WL 4989943, at *11 (S.D.N.Y. Sept. 16, 2016) ("At its worst, the plaintiff's motor strength was reported as 'slightly diminished' or rated at '4/5.' . . . Therefore, the ALJ's finding that the plaintiff's spinal impairment did not meet Listing 1.04 is supported by substantial evidence."), adopted by, 2016 WL 6952342 (S.D.N.Y. Nov. 28, 2016); Delgado v. Comm'r of Soc. Sec., 2020 WL 957562, at *15 (S.D.N.Y. Jan. 21, 2020) ("Although Section 1.04 does not contain an express severity standard, it seems clear that something more than a slight loss of function is required to satisfy its criteria."), adopted by, 2020 WL 953277 (S.D.N.Y. Feb. 27, 2020); Claymore v. Astrue, 519 F. App'x 36, 37 (2d Cir. 2013) (affirming ALJ's determination that Listing 1.04 was not met where "sensation was only slightly diminished to touch over the left distal leg").

As to section 1.04's requirement that there be "limitation of motion of the spine," the ALJ in his decision pointed to a separate section of the record, R. 610, as demonstrating that while plaintiff had "discomfort with lumbar flexion, extension, and lateral rotation, . . . it does not appear that he was restricted in actual movement." R. 14. Indeed, that portion of the record, which constituted medical notes from April 12, 2019, by another of plaintiff's providers, makes no mention of any limitation of motion of the spine. Instead, that portion states only that plaintiff had "discomfort" and rates plaintiff's muscle strength as ranging from 4/5 to 5/5 in all relevant muscle groups. R. 610. Plaintiff does not contest the ALJ's reliance on these records. He simply points to other records that he argues show "limited spinal motion." Pl. Mem. at 9. But "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino, 312 F.3d at 588. Plaintiff's argument would require the Court to impermissibly overrule the

Commissioner's resolution of the conflicting medical evidence.

"The reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." Rivera v. Comm'r of Soc. Sec., 2020 WL 8167136, at *12 (S.D.N.Y. Dec. 30, 2020), adopted by, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); accord Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.") (emphasis in original, punctuation omitted). Because plaintiff has not demonstrated that the ALJ's decision failed to satisfy that standard, remand is not warranted.

B. Whether the Opinion of Plaintiff's Treating Physician Was Properly Weighed

Citing the "treating physician" regulation, 20 C.F.R. § 416.927, plaintiff argues that the ALJ improperly "failed to conduct an analysis of 20 C.F.R. [§] 416.927(c)(1) or (c)(2)(i), (c)(2)(ii), (c)(3), (c)(4), or (c)(5)." Pl. Mem. at 10. He argues that "the ALJ should have accorded greater weight to the opinion of Dr. Cole," plaintiff's treating physician, and thus the case should be remanded "for proper consideration of the factors in 20 C.F.R. § 416.927(c) in weighing the opinion evidence of record." Id. at 11.

The flaw in plaintiff's argument is that the regulation he cites does not apply to his claim. 20 C.F.R. § 416.927 applies only to "claims filed . . . before March 27, 2017." For claims filed on or after March 27, 2017, "the rules in § 416.920c apply." Id. Plaintiff's application was filed on June 14, 2017. R. 11. Thus, 20 C.F.R. § 416.920c is the regulation governing plaintiff's claim. We therefore reject plaintiff's argument that remand is "warranted for proper consideration of the factors in 20 C.F.R. 416.927(c) in weighing the opinion evidence of record." Pl. Mem. at 11.

The new regulation does not treat opinions from treating sources as eligible for controlling weight. To the contrary, the new regulation provides that an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a).

Having reviewed the ALJ's decision in conjunction with the factors laid out in § 416.920c, the regulation applicable to plaintiff's case, the Court sees no basis for remand. 20 C.F.R. § 416.920c(a) states that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." Only those factors must be discussed in the ALJ's decision. Id. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section . . . .").[3]

The ALJ considered both of those factors in evaluating the opinion of Dr. Cole and concluding that the opinion had "some persuasiveness." R. 16. The ALJ first noted that Dr. Cole's opinion as to plaintiff's "exertional limitations" was consistent and supported by plaintiff's "history of two back surgeries and pain management," as well as plaintiff's "testimony that he does not use a cane all the time." Id. But the ALJ concluded that Dr. Cole's opinion as to "the sitting, standing, and walking max restrictions" was "not consistent with the record showing relief in pain and stiffness in [Plaintiff's] back." Id. The ALJ pointed to three

---

[3] The remaining factors are "relationship with the claimant," which has five subfactors, "specialization," and "other factors," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(3)-(5).

separate parts of the record as undermining Dr. Cole's opinion: "September 2018 treatment notes stating that the claimant reported improved pain in his back and pain down his leg," "January 2019 treatment notes stating that the claimant's back was less stiff after receiving a steroid injection," and plaintiff's own testimony "that he is able to alleviate pain by alternating positions."  Id.  The January 2019 notes were made by Dr. Cole himself, see R. 584, thus the ALJ properly concluded that Dr. Cole's opinion lacked support from "the objective medical evidence" and was inconsistent with the September 2018 notes from another provider and plaintiff's own hearing testimony.  20 C.F.R. § 416.920c(c)(1).  The ALJ was not required to undertake the analysis that plaintiff claims should have occurred.  And the ALJ did conduct the analysis required by the relevant regulations.  The plaintiff makes no argument that substantial evidence did not support the ALJ's RFC determination.  Accordingly, no basis for remand exists.

IV.  CONCLUSION

For the foregoing reasons, Aguirre's motion for judgment on the pleadings (Docket # 15) is denied, and the Commissioner's motion for judgment on the pleadings (Docket # 17) is granted.  The Clerk is requested to enter judgment dismissing this case.

SO ORDERED.

Dated: October 22, 2021
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge